Edward J. Greenfield, J.
Robert F. Wagner and Stanley Kreutzer, as members of the New York County Judicial Nominating Committee, moved to quash the subpoena duces tecum served on them by petitioner, Marie M. Lambert, commanding the production of a confidential questionnaire submitted to the committee by Arthur E. Blyn, her opponent in the Democratic primary election for the office of Surrogate, New York County.
The subpoena has been served calling for the production of these records in connection with the challenge to the legality and sufficiency of the designating petitions of respondent Blyn under section 330 et seq. of the Election Law. Petitioner contends that it is essential to examine these records to ascertain certain biographical facts concerning respondent Blyn so that she might possibly challenge his eligibility as a candidate on grounds of age, residence and citizenship.
Movants object to the enforcement of the subpoena, contending that disclosure would be a breach of confidentiality and would destroy the integrity of the Judicial Nominating Committee.
The Judicial Nominating Committees for the various sections of the State were established on February 24, 1975 by executive order of the Governor (Executive Order No. 5 [9 *444 NYCRR 3.5]. The committees were directed to evaluate information on behalf of the Governor and to advise him with respect to the appointment of persons to various judicial offices. The executive order explicitly provided (subd 1, second par): "all information submitted to the Committee[s] shall be confidential, and shall not be disclosed except to the Governor, unless required in connection with the performance of official duties or disciplinary proceedings.” (9 NYCRR 3.5.)
In carrying out their duties, the Judicial Nominating Committees developed a confidential questionnaire to be filled out by all potential candidates for judicial office. Movants contend that both candidates and those who comment upon their qualifications would be reluctant to be entirely candid if they knew their disclosures were available to the prying eyes of outsiders. Confidentiality and candor are complementary to one another. Destroy one and the other vanishes. Movants contend that if their files were to be exposed they would no longer be confidential advisors to the Governor but rather "repositories of ammunition for litigants in election battles”.
When public interest requires, a common-law privilege from disclosure may be accorded to confidential communications made to public officers in the performance of their duties. (Cirale v 80 Pine St. Corp., 35 NY2d 113, 117; Fischer v Citizens Committee, 72 Misc 2d 595, affd 42 AD2d 692.) As stated in Jones v State of New York (58 AD2d 736): "the court must balance the need of a litigant for information against the government’s duty to inquire into and ascertain the facts’”.
In Cirale v 80 Pine St. Corp. (supra, p 118) the Court of Appeals declared with respect to the public interest privilege: "Public interest encompasses not only the needs of the Government, but also the societal interests in redressing private wrongs and arriving at a just result in private litigation. Thus, the balancing that is required goes to the determination of the harm to the overall public interest. Once it is shown that disclosure would be more harmful to the interests of the Government than the interests of the party seeking the information, the overall public interest on balance would then be better served by nondisclosure.”
It would appear that the interests of a single litigant with respect to the validity of designating petitions or the eligibility of a candidate for office can be satisfied by means which would not dam up the free and confidential flow of information to *445 bodies charged by the Governor with recruiting and advising on the best possible judicial candidates.
There exists considerable doubt as to the extent to which a body set up by the Governor to help him carry out his powers is answerable to judicial process. (Gaynor v Rockefeller, 21 AD2d 92, 98, affd 15 NY2d 120.) While this executive immunity or privilege is not absolute (see United States v Nixon, 418 US 683, where executive privilege was limited in a situation where the executive himself was the subject of investigation.) "The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government.” (Barr v Matteo, 360 US 564, 572-573.)
Petitioner’s desires for information or admissions by her opponent must give way to the more fundamental requirements of public policy. The information she ostensibly seeks with respect to her opponent’s eligibility must be ascertained from primary sources. What is contained in the files of the Judicial Nominating Committee are at best secondary sources which need not be disclosed.
The motion to quash the subpoena duces tecum is granted.