■ In the Matter of ANEUDIS PEREZ et al., Respondents, v CITY UNIVERSITY OF NEW YORK et al., Appellants. [780 NYS2d 325]—

Judgment, Supreme Court, Bronx County (Gerald V. Esposito, J.), entered November 26, 2002, denying appellants' motion to dismiss this CPLR article 78 proceeding and directing appellants to conduct future meetings of the Senate and its Executive Committee in accordance with the Open Meetings Law (OML) and keep records of their final votes as required by OML and the Freedom of Information Law (FOIL), unanimously reversed, on the law, without costs, the motion granted and the petition dismissed.

This case involves a question of statutory interpretation. The issue is whether the Hostos Community College Senate and its Executive Committee are subject to the Open Meetings Law and the Freedom of Information Law as public bodies that were performing a governmental function in the circumstances presented in this case.

Hostos Community College is a two-year college operated by the City University of New York (CUNY). Education Law § 6204 (1) vests control over the governance and administration of the educational work of CUNY and all of its units, including Hostos Community College, "solely" in the CUNY Board of Trustees (Board). Pursuant to Education Law § 6206 (7), the Board, among other powers, establishes curriculum, prescribes conditions of student admission and regulates tuition and fees.

CUNY's Bylaws empower the Board to act on all curriculum items at regular monthly meetings. Bylaw § 8.6 provides that the faculty is responsible for conducting the "educational affairs customarily cared for by a college faculty," including student admission and retention, scholarship standards, attendance, curriculum, awarding of credits and granting of degrees.

Bylaw § 8.7 delegates the powers of the faculty to a faculty

council at CUNY's undergraduate colleges. Bylaw § 8.14 provides that individual colleges' governance plans supersede any inconsistent provision in Bylaws article VIII.

The Hostos Charter of Governance delegates the powers of the faculty and faculty council to a college-wide representative body that is known as the College Senate. This body includes students and noninstructional staff. Article I, § 1 of the Charter provides: "The College Senate will, in consultation with the administration and other groups in the College, *recommend* policy on all College matters, except for those within the domain of the President or any other Officer of the College or [CUNY], as set forth in the By-laws of the Board of Trustees. The Senate shall be specifically responsible for the *formulation* of academic policy and for *consultative* and *advisory* functions related to the programs, standards and goals of the College." (Emphasis added.)

The Charter further provides that the College Senate "shall serve in an *advisory* capacity," have representation on all committees established by the president or the deans to further the mission of the College, and "shall have the power to formulate new policy *recommendations* and to *review* already existing ones." (*Id.* [emphasis added].) The Senate also is empowered to *participate* in search committees for the college vice-president and all deans, *propose* amendments and revisions of the Board's Bylaws, and *recommend* any other actions it deems appropriate. It may *propose* amendments to its charter but *final approval* rests in the first instance with the president and ultimately with the Board. Finally, the Senate may conduct its business only when a quorum is present, and voting, except for routine matters, *"shall be by secret ballot"* (art III, § 2 [d] [emphasis added]).

The only final decision-making power the Senate has concerns appointments to various committees. Its Committee on Committees appoints the members of its standing committees with the exception of the Executive Committee. Some of these standing committees have what is, in effect, final decision-making power. For example, the Academic Standards Committee makes policy *recommendations* to the Senate regarding maintenance of matriculation, academic index, grading structure, attendance and student appeals related to these matters. However, although the Charter only gives this committee the power to make recommendations, the record reflects that this committee hears student appeals relating to these matters and that its decisions are generally implemented without further review.

The Scholarships and Awards Committee, whose members

are determined by the Committee on Committees with no other qualifications, *determines* recipients of Hostos scholarships and prizes.

The genesis of this case began on May 24, 2001 when respondent Chong Kim, a student at Hunter College, tried to attend a Senate meeting but was refused entry by security personnel, acting at the direction of Senate officials. The meeting, which was attended by Kim's counsel, never went into executive session. Votes were taken on various issues by secret ballot. The votes of the individual senators, as well as their discussions, are undisclosed.

On September 6, 2001, respondent Aneudis Perez, president of the Hostos Senate since July 1, 2001, and four others tried to attend a meeting of its Executive Committee. They too were barred by security officers. The Executive Committee did not go into executive session but did not take any votes.

Thereafter, respondents herein brought a petition for a declaration that appellants violated OML by barring them from the meetings and that the Hostos Charter provision for secret ballots violated FOIL and OML. They also sought an order directing future compliance.

Supreme Court, prefacing its discussion with a statement that OML and FOIL are to be liberally construed, ruled that both OML and FOIL applied to the subject bodies. Although recognizing that the majority of its powers are couched in advisory terms as explicitly stated in the governing documents, the court nevertheless found that the Senate has certain full and final powers.

With respect to the Executive Committee, the court found that it has "substantial organizational attributes" in its responsibilities for conducting the business of the Senate. The court also found that both the Senate and its Executive Committee have quorum requirements, an essential element of a "public body" as defined in Public Officers Law § 102 (2).

Based upon the foregoing, the court ruled that the Senate and Executive Committee are both public bodies performing governmental functions within the meaning of OML. Moreover, they are agencies performing governmental functions within the meaning of FOIL. As a result, the court found that the exclusion of the respondents from the meetings violated OML; the secret ballots and failure to record the votes at those meetings violated OML and FOIL; and Hostos Charter, article III, § 2 (d), providing for secret ballots, is void under OML and FOIL. The court ordered that future meetings of the Senate and Executive Committee must comply with OML and that they keep records of votes.

Public Officers Law § 103 (a), known as the Open Meetings Law, requires that every "meeting" of a "public body" be open to the general public, except for executive sessions. A "[m]eeting" is "the official convening of a public body for the purpose of conducting public business" (Public Officers Law § 102 [1]). "Public body" is defined as: "[A]ny entity, for which a quorum is required in order to conduct public business and which consists of two or more members, performing a governmental function for the state or for an agency or department thereof, or for a public corporation . . . , or committee or subcommittee or other similar body of such public body" (Public Officers Law § 102 [2]).

FOIL requires that each "agency" subject to its provisions "maintain . . . a record of the final vote of each member in every agency proceeding in which the member votes" (Public Officers Law § 87 [3] [a]).

"Agency" is defined as: "[A]ny state or municipal department, board, bureau, division, commission, committee, public authority, public corporation, council, office or other governmental entity performing a governmental or proprietary function *for the state or any one or more municipalities thereof*, except the judiciary or the state legislature" (Public Officers Law § 86 [3] [emphasis added]).

OML provides that: "Minutes shall be taken at all open meetings of a public body which shall consist of a record or summary of all motions, proposals, resolutions and any other matter formally voted upon and the vote thereon" (Public Officers Law § 106 [1]).

The governing principles that apply in this case are set forth in *Matter of Smith v City Univ. of N.Y.* (92 NY2d 707, 713 [1999]): "In determining whether an entity is a public body, various criteria or benchmarks are material. They include the authority under which the entity was created, the power distribution or sharing model under which it exists, the nature of its role, the power it possesses and under which it purports to act, and a realistic appraisal of its functional relationship to affected parties and constituencies." The Court then proceeded to make an expressly nondefinitive statement of the law (*id.* at 714): "*It may be* that an entity exercising only an advisory function would not qualify as a public body within the purview of the Open Meetings Law . . . ." (Emphasis added.)

The LaGuardia Community College Association (the college organization in question in *Smith*) collected and dispensed student activity funds without further approval from any university governing body. It also had the responsibility of

supervising and reviewing the student activity fee budget, and in this regard, the CUNY Bylaws had delegated to it the final decision-making authority. While the Bylaws reserved to the college president review of activity fee expenditures, such review was not mandatory and was found to be not "regular" or "relevantly operative" in that case. (*Id.* at 715.) Also, the president could not appropriate monies unless they were first recommended by the association, so its decision not to appropriate was tantamount to final. The association also possessed and exercised the nonreviewable power to suspend, regulate and reinstate student publications (*id.* at 714-715).

The Court of Appeals held that the LaGuardia Community College Association was a public body exercising a quintessentially governmental function, and therefore subject to OML. The Court found it unnecessary to determine whether a mere advisory role would preclude a finding that it was a public body because it found the association's role to be more than just advisory.

In our case, it is important to note that whatever curricular role the Senate has, the Board's decisions are final under the Education Law (*see Matter of Mendez v Reynolds*, 248 AD2d 62, 64 [1st Dept 1998]). There is no claim that such role was delegated to the Senate, or, as with the power over student activity fees in *Smith*, that it could be. Also, while the Senate has a role under the Charter in initiating certain academic proposals, nowhere does it provide that it is the only source of such proposals. Appellants maintain, and this Court finds, the Senate's power to designate members of other non-Senate committees does not make it a "public body" subject to OML and FOIL. This is true even though those other committees may have the authority to make certain final decisions. Indeed, it is conceded that the meetings of these committees are themselves not subject to OML. While, as a practical matter, the Senate may designate only its own members to these committees, there is nothing in the record to show that it invariably does. In short, the Senate, qua Senate, is not empowered to make the ultimate decisions that are made by the committees whose members it designates.

Finally, while the Court of Appeals in *Smith* declined to determine whether a body serving only in an advisory role is subject to OML and FOIL, the clear weight of authority (as cited therein) is that advisory bodies are not subject to either statute.

Based upon the foregoing analysis, the Hostos College Senate and its Executive Committee are not subject to either OML or

FOIL. Concur—Nardelli, J.P., Saxe, Williams, Friedman and Sweeny, JJ. [*See* 195 Misc 2d 16.]